# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LORIN F. SCHNEIDER,

    Plaintiff,

vs.

SOCIAL SECURITY ADMINISTRATION

    Defendant.

Case No.  2:12-cv-01375-JAD-GWF

**FINDING AND RECOMMENDATION**

This matter is before the Court on Plaintiff Lorin F. Schneider's ("Plaintiff") complaint for judicial review of administrative action by the acting Commissioner of Social Security denying his claim for disability benefits under Title II of the Social Security Act.  Specifically, Plaintiff seeks reversal of the Administrative Law Judge's ("ALJ") decision dated April 22, 2011 denying his claim for disability benefits.

    The Court granted Plaintiff's Application to Proceed in Forma Pauperis on August 3, 2012. Plaintiff's Complaint (#3) was on filed August 8, 2012. Defendant's Answer (#20) was filed on March 11, 2013, along with a Notice of Filing the Administrative Record (#21).  Plaintiff filed his Motion for Remand and/or Reversal (Doc. #23) on April 10, 2013.  The Defendant filed her Response to Plaintiff's Motion (Doc. #28) on June 26, 2013.  Plaintiff filed his Reply (Doc. #26) on July 16, 2013.

## BACKGROUND

### A. Procedural History

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplement security income on March 30, 2010.  AR 112.  Plaintiff alleges a disability onset date of February 23, 2010.  AR 139.  The Commissioner denied Plaintiff's claims at the initial

determination, and denied reconsideration of that denial on October 19, 2010. AR 74. Plaintiff requested an appeal before an ALJ on November 4, 2010. AR 80. The ALJ conducted a hearing on April 15, 2011. AR 38. The ALJ issued an unfavorable decision on April 22, 2011. AR 31. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§ 636 (b)(1)(B) and (C).

### B. Factual History

Plaintiff was born on November 23, 1962. AR 40. Plaintiff last worked as a handyman at a mobile home park, where he began working in 1994. AR 42. Plaintiff testified at the hearing that he stopped working due to hospitalization in February of 2010. *Id.* As the bases for his application for disability benefits, Plaintiff complained of respiratory problems and peripheral neuropathy.

#### i. *Treatment*

Plaintiff was hospitalized at University Medical Center ("UMC") from February 24, 2010 to April 12, 2010 with admission diagnoses of respiratory failure, fever, pleural effusion, and pneumonia. AR 189. Plaintiff was severely deconditioned during the admission. *Id.* He was placed on mechanical ventilation due to altered mental status and pending respiratory failure. *Id.* Plaintiff's discharge diagnoses were pneumonia, fungemia, deconditioning, hypertension, a resolved fungal rash, resolved dysphasia, and resolved anemia. *Id.* At a followup appointment on April 27, 2010, the notes reflect that his respiratory distress "[had] since resolved." AR 398. Plaintiff then began complaining of lower extremity weakness and numbness with paresthesias radiating up his legs. *Id.* Nevertheless, the notes explain that Plaintiff was "able to ambulate and carry out activities of daily living," and that he had refused physical and occupational therapy because he was "reconditioning himself." *Id.* Plaintiff repeated his complaints of paresthesias at another followup on August 31, 2010. AR 400. On September 1, 2010, a chest x-ray showed right middle and lower lung lobe atelectasis or scarring. AR 394. At a November 30, 2010 followup visit, the notes indicate Plaintiff had persistent peripheral neuropathy since his April 2010 discharge. AR 422. Another visit on January 25, 2011 indicated Plaintiff was being treated for the peripheral neuropathy with medication and physical therapy. AR 425. At both visits, Plaintiff's

respiration was clear to auscultation bilaterally. AR 422, 425. Notes from Plaintiff's March 31, 2013 UMC visit detail that consultation with outpatient neurology was strongly advised. AR 429. A UMC referral form for a neurologist was given to Plaintiff on April 5, 2011. AR 427. The record does not indicate that Plaintiff ever sought or received treatment from a specialist.

    **ii.** *Medical Opinions*

Ali Jabber, MD completed a Medical Source Statement on March 22, 2010 in which he stated Plaintiff was unable to manage his funds or direct others how to manage them due to Plaintiff's history of alcohol abuse. AR 187. Dr. Jabber also stated that Plaintiff needed a period of rehabilitation secondary to a slow mental status recovery, and that it was uncertain whether Plaintiff would be able to manage his funds in the future. *Id.*

R.D. Prabhu, MD conducted a pulmonary examination on July 1, 2010. AR 326. Plaintiff complained of symptoms consistent with chronic bronchitis, and told Dr. Prabhu that he had COPD and emphysema. *Id.* Plaintiff also complained of shortness of breath on exertion, and stated he could only walk about three blocks at a slow pace on level ground due to loss of coordination and balance, tingling in the feet, and peripheral neuropathy. *Id.* Dr. Prabhu noted that Plaintiff's respiratory failure and pneumonia were resolved with treatment. AR 326. Plaintiff reported generalized tiredness, weakness, and easy fatigability, and reported a 27-year smoking habit, which he continued. *Id.* Dr. Prabhu also conducted a pulmonary function test. AR 325. The results were normal, and the physical exam was within the normal limits except for a rare rhonchi on auscultation of Plaintiff's lungs. AR 325, 327. Dr. Prabhu completed a functional capacity assessment with the following limitations: Plaintiff could occasionally lift 20 pounds, frequently lift less than 10 pounds, stand/walk at least two hours in a work day, and sit less than six hours in an 8-hour workday. AR 323. Dr. Prabhu also opined that Plaintiff could perform occasionally postural activities, was limited from traveling as well as from working in environments with chemicals, and would have to alternate between sitting and standing. AR 232-24.

L.D. Larson, MD conducted a consultative examination on July 7, 2010. AR 361. Plaintiff reported that he owned a walker at home, but did not use it. *Id.* Plaintiff reported numb feet on both sides, and that his legs cramp up and his hip joints cause considerable pain. *Id.* Plaintiff

claimed that he could not sit, stand, or walk for more than 30 consecutive minutes, and claimed that if he stands or walks for too long his legs will "give out." *Id.* Plaintiff reported that he is able to walk to his friend's, vacuum his house, and ride his bicycle. AR 363. His mental assessment was normal. Dr. Larson concluded that Plaintiff functions "in the Average range of intellectual ability" and would be able to understand and carry out an extensive variety of complex instructions. AR 364. Dr. Larson diagnosed Plaintiff with a pain disorder associated with both psychological factors and a general medical condition and alcohol dependence in recent remission, noting also Plaintiff's recent hospitalization for pneumonia and respiratory distress. AR 365.

State Agency Dr. Lorraine Lake completed a consultative Residual Functional Capacity ("RFC") assessment on July 19, 2010. Dr. Lake opined that Plaintiff could occasionally lift 20 pounds, frequently lift less than 10 pounds, stand/walk about six hours in an 8-hour workday, sit about six hours in an 8-hour workday, push or pull an unlimited amount, and occasionally climb, balance, stoop, kneel, crouch, or crawl. AR 53-55. Dr. Lorraine also opined that Plaintiff must avoid fumes, odors, dusts, gases, poor ventilation, etc. even at moderate exposure. AR 57. Dr. Lake also disagreed with Dr. Prabhu's opinion that Plaintiff's RFC was less-than-sedentary, opining that it is instead sedentary. AR 59.

**C.     ALJ's Decision**

The ALJ issued his decision on April 22, 2011. The ALJ found that Plaintiff was not disabled, because Plaintiff possessed sufficient RFC to perform other work. In reaching this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f). First, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 23, 2010. AR 26. Second, the ALJ found Plaintiff had severe impairments in the form of respiratory failure, history of substance abuse, and peripheral neuropathy. AR 26. Third, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appx. 1. *Id.* Fourth, the ALJ found Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). AR 27.

In finding Plaintiff had the RFC to perform sedentary work, the ALJ stated he "considered

all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" AR 26.  The ALJ considered Plaintiff's complaints and reports to all his examining physicians as well as his treatment notes from his two-month hospitalization and followup visits, summarizing each.  AR 27. The ALJ also noted that Plaintiff claimed he cannot walk or stand for long periods, and that his legs cramp up if he sat for "a long time." *Id.*  In finding these claims to be inconsistent with the objective medical evidence, the ALJ noted that "the state agency's [RFC] assessment, the consultative examinations, and the medical examinations reflected that [Plaintiff] was able to perform most basic work activities." *Id.* The ALJ afforded varying degrees of weight to the medical opinions.  He found Dr. Jabber's opinion "objectively unsupported by the record as a whole" and "afforded it little weight."  AR 28. He found Dr. Larson's opinion consistent with the record and afforded it "great weight."  AR 29. "Dr. Prabhu's statement," the ALJ continued, "appeared to be at least a slight overestimate of [Plaintiff's] exertional capacity," and the ALJ "did not fully accept it." *Id.*  Finally, the ALJ considered State Agency Dr. Lake's RFC assessment, and afforded it "significant weight" because it was "supported by the record as a whole." AR 29.

      Next, the ALJ compared "the claimant's [RFC] with the physical and mental demands" of his past work as a handyman, and found that he was unable to perform it.  AR 30.  Finally, the ALJ determined that Plaintiff is able to perform other work based on his inquiry under the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Guidelines").  The ALJ determined that Plaintiff was a younger individual, age 45-49, under 20 C.F.R. 404.1563, and that he has a limited education and is able to communicate in English under 20 C.F.R. 404.1564.  The ALJ did not consider the transferability of skills because applying the Guidelines directly supported a finding of "not disabled," whether or not the claimant had transferable job skills, under SSR 82-41.  Based on the RFC for the full range of sedentary work, considering Plaintiff's age, education, and work experience, the ALJ concluded that Guidelines Rule 201.19 directed a finding of "not disabled."

...

...

# DISCUSSION

## I.  Standard of Review

A federal court's review of an ALJ's decision is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001).  The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive.  42 U.S.C. § 405(g).  Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).  *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision.  *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings.  *Lewin*, 654 F.2d at 635 (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)).  In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In the alternative, the

District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II.     Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

(a)   he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

(b)   the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

## III.    Analysis of the Plaintiff's Alleged Disability

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b).

Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is not considered disabled. *Id*. § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d). If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id*. § 416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id*. § 404.1520(e). If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. *Id.* § 404.1520(f). If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits. *Id.* § 404.1520(a). Plaintiff now asserts the ALJ improperly rejected an examining physicians' opinions, and failed to incorporate an opinion he did accept into his RFC assessment.

### A. Whether the ALJ's Finding that Plaintiff was Able to Perform Sedentary Work Was Supported by Substantial Evidence in the Record.

In *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001), the Ninth Circuit set forth the rules regarding the weight that is to be accorded to different types of medical opinions:

> Title II's implementing regulations distinguish among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining [or reviewing] physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. §404.1527(d). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Lester*, 81 F.3d at 830. 20 C.F.R. § 404.1527(d). In addition, the regulations give more weight to opinions that are explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists.

"Although the contrary opinion of a non-examining medical expert does not alone constitute a specific legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence that is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d

8

747, 752 (9th Cir. 1989)). The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence. *Magallanes*, 881 F.2d at 750. An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984). And like the opinion of a treating doctor, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). In determining whether an ALJ provided a legitimate reason for rejecting an opinion, though, courts are not deprived from their faculties "for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes,* 881 F.2d at 755.

Plaintiff argues that the ALJ did not articulate legitimate reasons based on substantial evidence to reject Dr. Prabhu's opinions. By finding Plaintiff had the RFC to perform sedentary work, the ALJ determined Plaintiff could lift no more than 10 pounds at a time, could sit for six hours in an 8-hour day, and could stand or walk no more than two hours in an 8-hour day. *Bell v. Astrue*, 640 F.Supp.2d 1247, 1255 (E.D. Calif. 2009). Dr. Prabhu, however, opined that Plaintiff could occasionally lift *20 pounds* and could sit for *less than* six hours in an 8-hour workday. AR 323. The ALJ rejected Dr. Prabhu's assessment that Plaintiff could lift 20 pounds because it was a "slight overestimate" of Plaintiff's ability. But, the ALJ was not explicit about his reasons for rejecting Dr. Prabhu's assessment of Plaintiff's sitting capability. AR 29. The ALJ, however, explicitly afforded significant weight to Dr. Lake's conclusion that Plaintiff was able to sit for six hours "because [it was] supported by the record as a whole." *Id.* Dr. Lake reached this conclusion because the "objective evidence fail[ed] to demonstrate the subjective limitations alleged by the claimant." AR 58. The ALJ noted, for example, that Plaintiff's alleged inability to sit for extended periods is belied by his failure to follow up with specialists and his refusal of physical therapy. AR 28. The ALJ further noted that, aside from occasional sleep disturbances, Plaintiff reported having no difficulty with his functional activities. AR 28. Because the ALJ explained why he afforded Dr. Lake's opinion great weight–because it is supported by a record that discounts Plaintiff's credibility–the reason why he rejected Dr. Prabhu's contradictory conclusion can be

9

1  inferred–because it is not supported by the record.

2  Plaintiff also points to Dr. Prabhu's opinion that Plaintiff must alternate between sitting and standing, an opinion which could arguably eliminate Plaintiff's occupational base. As above, however, Dr. Lake concluded that Plaintiff need not alternate between sitting and standing, an opinion to which the ALJ afforded great weight because it was supported by the record. It can similarly be inferred, then, that the ALJ rejected Dr. Prabhu's sit/stand conclusion because the record did not support it. Therefore, the Court finds the ALJ provided legitimate reasons supported by substantial evidence to reject Dr. Prabhu's assessments.

### B.   Whether the ALJ Was Required to Obtain the Testimony of a Vocational Expert to Determine Whether There Are Sedentary Jobs That Plaintiff Can Perform.

The ALJ found at step five of the sequential evaluation process that Plaintiff was not disabled based on reference to the Guidelines. AR. 30. Plaintiff argues that the ALJ was required to obtain the opinion testimony of a vocational expert to determine whether there are sedentary jobs available in sufficient numbers in the national economy that Plaintiff can perform.

The Commissioner can meet her step five burden in two ways. She can rely on the testimony of a vocational expert or rely on the Guidelines to support a finding that the claimant can perform work that is available in significant numbers in the national economy. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001). Where the claimant has significant non-exertional impairments, however, the ALJ cannot rely on the Guidelines. When testimony of a vocational expert is used at step five, the vocational expert "must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational abilities would satisfy. 20 C.F.R. §404.1566(b)." *Id. See also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (stating that a vocational expert is required only when there are "sufficiently severe" non-exertional limitations not accounted for in the grid).

Here, both Dr. Prabhu and Dr. Lake found that Plaintiff was subject to environmental restrictions. Dr. Prabhu stated that Plaintiff had environmental restrictions for chemicals. AR 324. Dr. Lake stated that Plaintiff should avoid all exposure to "fumes, odors, dusts, gases, poor ventilation, etc." AR 57.

Social Security Ruling (SSR) 85-15 states:

> Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.
>
> Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, or other potentially damaging conditions.
>
> Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VS.

SSR 96-9P also states that "[r]estrictions to avoid exposure to odors or dust must be evaluated on an individual basis. The RFC assessment must specify which environments are restricted and state the extent of the restrictions; e.g., whether only excessive or even small amounts of dust must be avoided." SSR 96-9P further states that:

> When the extent of erosion of the unskilled sedentary occupational base [as a result of nonexertional limitations] is not clear, the adjudicator may consult various authoritative written sources, such as the DOT, SCO, the **Occupational Outlook Handbook** or **County Business Patterns**.
>
> In more complex cases, the adjudicator may use the resources of a vocational specialist or vocational expert. . . .

The Commissioner does not dispute that a finding that Plaintiff had a significant environmental restriction with respect to exposure to fumes, odors, dusts, gases, and poor ventilation would require the ALJ to obtain testimony from a vocational expert to determine if there are available sedentary jobs that Plaintiff could perform. The Commissioner argues, instead, that the Court should infer that the ALJ rejected this restriction based on his citation to medical records that indicate the respiratory failure for which Plaintiff was hospitalized had resolved.

The Court is unable to draw such an inference from the ALJ's decision. Although the ALJ gave considerable treatment to the apparent resolution of Plaintiff's respiratory failure, the record as a whole does not support that all of Plaintiff's pulmonary issues are resolved. Nowhere in his decision did the ALJ discuss Dr. Lake's medical finding that Plaintiff should avoid all exposure to fumes, odors, dusts, gases, or places with poor ventilation. The ALJ stated that he gave significant

weight to Dr. Lake's conclusion that Plaintiff was capable of performing sedentary work. AR 29 . In so doing, he gave no indication that he rejected Dr. Lake's opinion regarding Plaintiff's environmental restrictions. The only logical inference to be drawn from the ALJ's decision is that he overlooked or failed to consider the environmental restrictions in deciding that Plaintiff was not disabled based on the Guidelines.

## CONCLUSION

Having reviewed, considered and weighed both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the Court finds the ALJ's decision that Plaintiff has the residual functional capacity to perform sedentary work is supported by substantial evidence. The Court finds, however, that the ALJ failed to consider the effect of environmental restrictions on Plaintiff's residual functional capacity. The ALJ therefore erred in relying on the Medical-Vocational Guidelines to conclude that Plaintiff was not disabled. He should, instead, have obtained the testimony of a vocational expert as to whether there are sedentary jobs available in sufficient numbers in the national economy that Plaintiff can perform given his significant environmental restrictions. Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand and/or Reversal (Doc. #23) be **granted**, and that this matter be remanded to the Social Security Administration for further administrative proceedings, including the obtaining of vocational expert testimony, to determine whether there are sedentary jobs available in sufficient numbers in the national economy that Plaintiff can perform in light of the environmental restrictions on his residual functional capacity.

...

...

...

...

...

...

**NOTICE**

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. Appeals may been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 21st day of November, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge